**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **COMMITTEE TO IMPOSE TERM LIMITS ON THE OHIO SUPREME COURT AND TO PRECLUDE SPECIAL LEGAL STATUS FOR MEMBERS AND EMPLOYEES OF THE OHIO GENERAL ASSEMBLY, et al.,** | **Case No. 2:16-cv-1030** |
| | **Judge Graham** |
| | **Magistrate Judge Kemp** |
| **Plaintiffs,** | |
| **v.** | |
| **OHIO BALLOT BOARD, et al.,** | |
| **Defendants.** | |

**<u>OPINION & ORDER</u>**

Plaintiffs move for a temporary restraining order and preliminary injunction. (Doc. 2). Plaintiffs want to put a two-part constitutional amendment on the ballot by way of Ohio's initiative process. Ohio prohibits anyone from proposing to its voters a multi-part amendment or law. Ohio tasked the Ohio Ballot Board with enforcing this rule. Plaintiffs sued the Ohio Ballot Board and its members (and Ohio's Attorney General), alleging that Ohio's restriction is an unconstitutional restraint on free speech.

**I)  Background**

There are four plaintiffs: (1) an unincorporated association called the "Committee to Impose Term Limits on the Ohio Supreme Court and to Preclude Special Legal Status for Members and Employees of the Ohio General Assembly" (the "Committee"), (2) Ronald Alban, (3) Tim Boggs, and (4) John Boyle, Jr. The three individuals are residents of Ohio and members of the Committee. Plaintiffs are currently engaged in an initiative petition where they seek to submit a proposed constitutional amendment to the people of the State of Ohio for a statewide vote. The proposed constitutional amendment seeks to add two new sections, to read as follows:

> Article IV, Section 6. (D) No person shall be elected or appointed as a judge of the Supreme Court if said person, at the time of said election or appointment, has served nine or more consecutive years as a judge of the Supreme Court regardless of whether as chief justice, a justice, or a combination of the two.
>
> Article II, Section 43. All laws that apply to the people of the State of Ohio and its political subdivisions shall apply equally to the members and employees of the General Assembly.

(Compl. at ¶ 61).

There are seven defendants: (1) the Ohio Ballot Board, a five-member board; (2) Jon Husted, the Ohio Secretary of State and a member of the Ohio Ballot Board; (3) William Coley, a member of the Ohio State Senate and a member of the Ohio Ballot Board; (4) Kathleen Clyde, a member of the Ohio House of Representatives and a member of the Ohio Ballot Board; (5) William Morgan, a member of the Ohio Ballot Board; (6) Michael Skindell, a member of the Ohio State Senate and a member of the Ohio Ballot Board; and (7) R. Michael DeWine, the Ohio Attorney General.

Plaintiffs allege that part of Ohio's process for filing a voter initiative on the ballot is unconstitutional. To understand Plaintiffs' argument requires an understanding of the voter initiative review process.

The Ohio Revised Code requires a voter initiative, whereby voters bypass the Ohio General Assembly to put a law or constitutional amendment on the ballot, to go through a certification process. The person who wants an initiative on the ballot must first file a preliminary petition with the Ohio Attorney General. Ohio Rev. Code § 3519.01(A). That petition must be signed by 1,000 qualified Ohio electors, include the full text of the proposed law or constitutional amendment, and include a summary of the proposed law or amendment. *Id.* Next, the Attorney General has 10 days to certify whether the summary of the proposed law or amendment is a fair and truthful statement. *Id.* If the Attorney General certifies the law, he must then send it to the Ohio Ballot Board. *Id.* Within 10 days after receiving the certified petition from the attorney general, the Ballot Board must determine whether the initiative petition "contains only one proposed law or constitutional amendment." Ohio Rev. Code § 3505.062(A). If the Ballot Board concludes that the petition contains only one proposed law or amendment, it must certify its approval to the Attorney General, who then must file a verified copy of the proposed law or amendment with the Secretary of State. *Id.* However, if the Ballot Board concludes that the petition contains more than one proposed law or amendment, the Board "shall

divide the initiative petition into individual petitions containing only one proposed law or constitutional amendment so as to enable voters to vote on each proposal separately and certify its approval to the attorney general." *Id.* This is called the "separate-petitions" requirement.

Here, Plaintiffs filed the required materials with the Attorney General on October 26, 2016. Between the Attorney General's ten days and the Ballot Board's ten days, a decision on whether to divide the petition into separate petitions will occur no later than Tuesday, November 17, 2016,[1] but it may happen before then.

Plaintiffs request that an injunction be issued before November 17, 2016. Plaintiffs ask the Court to enjoin the voter initiative review process at three different stages. Plaintiffs ask the Court to enjoin (1) the Attorney General from tendering the initiative petition to the Ballot Board, (2) the Ballot Board from subjecting the initiative petition to any review or assessment, and (3) the Ballot Board from deciding to divide or dividing the constitutional amendment proposed by Plaintiffs' initiative petition.

Plaintiffs also request that the Court waive the security requirement should the Court issue a preliminary injunction. *See* Fed. R. Civ. P. 65(c) (requiring movant to give "security in an amount that the Court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.")

## II) Procedural issues

Plaintiffs filed for both a TRO and a preliminary injunction. Defendants oppose that motion, but style their opposition as "[t]o plaintiffs' request for a temporary restraining order." (Defs.' Resp., Doc. 9 at PAGEID 615). Defendants conclude, asking the Court "to deny Plaintiffs' request for a temporary restraining order." (*Id.* at 20). But if there is notice to the other side, the same standard governs the analysis of TROs and preliminary injunctions. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008); *Midwest Retailer Associated, Ltd. v. City of Toledo*, 563 F. Supp. 2d 796, 802 (N.D. Ohio 2008). And there has been notice: Defendants attended the preliminary conference held on October 28, 2016 and they have briefed the relevant legal issues.

---

[1] Because the Attorney General's deadline falls on a Saturday, he has until the following Monday, which is November 7, 2016, to do his work. Ten days from that is November 17, 2016.

The Court typically would conduct a hearing on a request for a preliminary injunction, but when "no material facts [are] in dispute. . . . the district court [is not] required to conduct an evidentiary hearing prior to ruling on Plaintiff's motion for preliminary injunction." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007).

> [W]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held. [However,] where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing.

*Id.* (alterations in original) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312–13 (11th Cir. 1998)).

A hearing may be required if a defendant denies the allegations in the plaintiff's complaint. *Id.* (citing *Carpenters' Dist. Council, Detroit, Wayne & Oakland Ctys. & Vicinity, of United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Cicci*, 261 F.2d 5, 8 (6th Cir. 1958) ("[I]f the allegations of a complaint are denied by a defendant, he is entitled to a hearing, which includes the right to offer evidence in support of his factual claims.").

Here, no material facts are in dispute; the Court need not make any credibility determinations. Neither Plaintiffs nor Defendants request a hearing. Therefore, the Court will decide the motion for TRO and preliminary injunction on the briefs.

## III)    Discussion

When considering a motion for preliminary injunction, a district court must balance four factors:
(1) whether the movant has a strong likelihood of success on the merits;
(2) whether the movant would suffer irreparable injury without the injunction;
(3) whether issuance of the injunction would cause substantial harm to others; and
(4) whether the public interest would be served by the issuance of the injunction.

*Certified Restoration*, 511 F.3d at 542.

### A)  Plaintiffs have not established a likelihood of success on the merits

The complaint asserts that Ohio's separate-petitions requirement violates the First Amendment to the United States Constitution.  Plaintiffs argue that they are likely to succeed on the merits of their free-speech claim because the government regulation at issue regulates core political speech and is a content-based restriction on speech. Content-based restrictions on speech are "presumptively unconstitutional and may be justified only if the government proves

that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, __ U.S. __, 135 S.Ct. 2218, 2226 (2015). Specifically, Plaintiffs claim "the action of the Ohio Ballot Board in subjecting the text of the proposed constitutional amendment to governmental review, assessment, and approval constitutes a content-based regulation of core political speech that does not satisfy the requirements of strict scrutiny." (Pls.' Mot., Doc. 2 at PAGEID 44-45).

Defendants argue that (1) issue preclusion bars Plaintiffs from re-litigating this issue; (2) Plaintiffs' claim fails to state any First Amendment violation; and (3) the challenged rules are constitutional under the "more flexible standard" that applies to content-neutral rules. There exists some doubt as to whether issue preclusion applies here—it may. And there is some doubt as to whether Plaintiffs' claim implicates the First Amendment at all—it may not. Both of these arguments cast doubt on the likelihood of Plaintiffs' success on the merits. But the clearest path to assessing the likelihood of success on the merits is to assess first whether the regulation is content-neutral and then to assess whether it passes the relevant test of constitutionality.

The Ohio Supreme Court has already held that the separate-petition rule is not a content-based restriction on speech. *See State ex rel. Ethics First-You Decide Ohio Political Action Comm. v. DeWine*, ____ N.E.3d ____, 2016-Ohio-3144, ¶ 23 ("Plainly, the 'separate petitions' requirement is not content-based. It applies to all petitions, irrespective of the substantive message the petition seeks to communicate."). Plaintiffs' attempts to escape the reasoning in *Ethics First* fail.

First, Plaintiffs argue this Court needs to issue a more complete analysis than the Ohio Supreme Court's "limited and truncated statement" in *Ethics First*. (Pls.' Mot. at PAGEID 49). Second, Plaintiffs remind the Court that it isn't bound by the Ohio Supreme Court's decision. Third, Plaintiffs argue that *Ethics First* was wrongly decided because it ignores an alternative basis for analyzing a content-based restriction on speech, as set forth in *Reed*.

The Court is aware that it is not bound to follow a decision of the Ohio Supreme Court on federal constitutional law. *See, e.g.*, *UPS Ground Freight, Inc. v. Farran*, 990 F. Supp. 2d 848, 860 (S.D. Ohio 2014) ("*Erie* does not give state court decisions precedential effect in deciding questions of federal law."). But the reasoning in *Ethics First* is instructive, and the Court uses it as a basis for showing why Plaintiffs are unlikely to succeed on the merits of their claim.

In *Ethics First*, three individuals and a committee[2] challenged the constitutionality of the same provisions of the Ohio Revised Code that Plaintiffs challenge here. *Ethics First*, 2016-Ohio-3144, ¶ 1. The three individuals who were members of the committee in *Ethics First* are the same individuals who are members of the Committee here.[3] Among other things, those plaintiffs argued that the power given to the Ohio Ballot Board was "an unconstitutional content-based law that cannot survive strict scrutiny." *Id.* at ¶ 22. But the Ohio Supreme Court held that, "[t]he dispositive question is whether the regulation, on its face, 'draws distinctions based on the message a speaker conveys.' Plainly, the 'separate petitions' requirement is not content-based. It applies to all petitions, irrespective of the substantive message the petition seeks to communicate." *Id.* at ¶ 23 (internal quotation omitted) (quoting *Reed*, 135 S.Ct. at 2227). The Court is persuaded by the simple reasoning of the Ohio Supreme Court, that because the rule applies to all petitions, regardless of their message, the rule is content-neutral. The rule does not "single[] out specific subject matter for differential treatment," *Reed*, 135 S.Ct. at 2230, and all petitions receive the same review. The Ballot Board only deciphers how many different issues the petition raises, and it does so irrespective of what those issues are. On its face, Ohio's separate-petitions requirement does not appear to be a content-based restriction on Plaintiffs' speech.

But Plaintiffs argue that the Ohio Supreme Court failed to analyze the separate-petitions requirement under *Reed*'s second category of laws "that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be justified without reference to the content of the regulated speech, or that were adopted by the government because of disagreement with the message [the speech] conveys." *Reed*, 135 S.Ct. at 2227 (alteration in original) (internal quotation marks omitted) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Plaintiffs are correct that the Ohio Supreme Court did not analyze this additional category of laws in *Ethics First*.

To narrow the inquiry, the second prong of *Reed*'s second category of laws—laws adopted by the government because it disagrees with the message conveyed—plainly does not

---

[2] The individuals and the committee, as relators, brought a mandamus action on behalf of the state.

[3] The identity of the committee members provides the factual basis for Defendants' issue-preclusion argument, which the Court declines to address here.

apply here. Plaintiffs nowhere allege or argue that the regulation was adopted by the government because of its disagreement with the message that any particular speech conveys.

The first prong of *Reed*'s second category of speech is more difficult to analyze here. Plaintiffs argue that in doing its job, the Ballot Board must refer to the actual language in the initiative petition. Therefore, by examining the proposed petition, the Ballot Board must refer to the content of the regulated speech. Plaintiffs argue that this puts the separate-petitions requirement squarely within the purview of *Reed*'s second category: rules that "cannot be justified without reference to the content of the regulated speech." But *Reed*'s second category is not "rules that cannot be *applied* without reference to the content of the regulated speech." It is rules that cannot be *justified* without looking at the content of the speech those rules regulate. Here's an example to make concrete an abstract concept: "The City's justification for the Adjacent–Sidewalks Ordinance—its interest in alleviating congestion and ensuring public safety on the sidewalks and streets surrounding Wrigley Field—is content neutral." *Left Field Media LLC v. City of Chicago*, 137 F. Supp. 3d 1127, 1137 (N.D. Ill. 2015), *aff'd sub nom. Left Field Media LLC v. City of Chicago, Ill.*, 822 F.3d 988 (7th Cir. 2016). The Court must look at the government's justification for its facially content-neutral law to see if the law actually discriminates based on the content of the speech being regulated.

Here, Ohio's justification for the separate-petitions requirement is "to enable the voters to vote on that proposal separately." Ohio Rev. Code § 3519.01(A). This justification makes no reference to the content of the petitions; that is, it makes no reference to the "topic discussed or the idea or message expressed." *Reed*, 135 S.Ct. at 2227. The justification merely references the existence of multiple proposals within one petition, and the Court believes that this does not amount to "reference to the content of the regulated speech." *Id.* (quoting *Ward*, 491 U.S. at 791). Therefore, the separate-petitions requirement appears to be content neutral under either of *Reed*'s categories of analysis.

Because the separate-petitions rule appears to be content neutral, strict scrutiny likely does not apply. Plaintiffs make no attempt to analyze the rule under any paradigm other than strict scrutiny. But the Court must so analyze the rule, for purposes of this motion, because it has found it unlikely that the challenged rule is a content-based restriction on speech.

Defendants suggest that the proper constitutional analysis is a "more flexible standard" used to assess election laws. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

> A court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Id.* (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). Plaintiffs respond by repeating their argument that strict scrutiny applies, but they offer no alternative to Defendants' *Burdick-Anderson* test. Plaintiffs, using this analysis, conclude that the test tips in their favor because the government lacks the requisite interest and, even if it had such an interest, Ohio's rule cannot be justified by that interest.

But the weight of authority is with Defendants. "[T]he state may constitutionally place nondiscriminatory, content-neutral limitations on the plaintiffs' ability to initiate legislation." *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir. 1993). And typically, when "content-neutral, nondiscriminatory regulations . . . are . . . reasonably related to the purpose of administering an honest and fair initiative procedure," a plaintiff's "First Amendment claim is without merit." *Id.* That's because under this less exacting review, "'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788).

And specifically, other circuits have held similar rules—like the separate-petition rule here—to be constitutional under *Burdick*'s flexible balancing test. *See, e.g.*, *Pest Comm. v. Miller*, 626 F.3d 1097, 1108 (9th Cir. 2010) (single-subject requirement for initiatives); *Campbell v. Buckley*, 203 F.3d 738, 746–47 (10th Cir. 2000) ("While compliance with the single subject requirement may be difficult for some who wish to offer ballot initiatives, and may to some extent limit their goal of unfettered participation in the electoral and legislative process, we are satisfied that the state's reasons for its procedures are sufficiently weighty to justify the procedures."). For example, in *Pest Committee*, the Ninth Circuit held that Nevada's requirements—that initiative and referendum petitions contain only a single subject and a description of the effect of the law—"advance Nevada's important interests in avoiding confusion, promoting informed decision-making, and preventing 'logrolling.'" 626 F.3d at 1107.

Here, Ohio's separate-petitions requirement implicates the same justifications cited by other circuits. Ohio has both a "strong interest in ensuring that its elections are run fairly and honestly," *Taxpayers United*, 994 F.2d at 297 (citing *Anderson*, 460 U.S. at 788), and "a strong

interest in ensuring that proposals are not submitted for enactment into law unless they have sufficient support," *id.* (citing *Anderson*, 460 U.S. at 788 n.9). Furthermore, the separate-petitions rule is "reasonably related," *id.*, to these interests, as the courts in *Pest Committee* and *Campbell* held, for without the separate-petitions rule, a petitioner could combine many initiatives into one petition, and neither signatories to the petition nor voters at the ballot could consider the proposals separately.

In short, the Court finds that it is likely that the separate-petitions rule is content neutral. If the rule is content neutral, then a flexible test, rather than strict scrutiny, applies. And if that flexible test applies, Ohio's rules are likely constitutional. Therefore, Plaintiffs are unlikely to succeed on the merits of their First Amendment claim.

### B) Plaintiffs will not suffer irreparable injury without an injunction

Plaintiffs argue they will suffer irreparable harm without an injunction because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). In *Elrod*, the Supreme Court found the irreparable-injury prong to be satisfied where the  injury was "threatened and occurring at the time of respondents' motion." 427 U.S. at 374. Thus, the outcome of the irreparable-injury inquiry largely depends upon whether Plaintiffs will likely succeed on the merits of their First Amendment claim. Because Plaintiffs are not likely to succeed on the merits of that claim, they are not likely to suffer irreparable injury.

Practically, though, if the Ohio Ballot Board splits Plaintiffs' petition into two petitions, then Plaintiffs will need to collect 611,182 signatures to get their proposed amendments on the ballot rather than the 305,591 they would need if the Attorney General and the Ballot Board approved their proposed initiative as is. If the Court denies Plaintiffs' motion, but later grants the relief they seek, the only injury would be the lost time—between the denial of this motion and the ruling on the merits—for Plaintiffs to collect the required signatures. But Plaintiffs could still collect the required signatures to include their initiative on a ballot. Indeed, they can present both initiatives to the same individuals they solicit for signatures. Plaintiffs do not identify any irreparable injury.

### C) Substantial harm to others

Plaintiffs argue that Defendants will suffer no harm if enjoined from enforcing the statutes at issue. Plaintiffs argue that the Ohio Ballot Board could still split its single initiative

petition into multiple ballot issues *after* the Committee collects the required number of signatures to put the measure on the ballot, as the Ballot Board allegedly did in 1992 and 2005. (Pls.' Mot. at PAGEID 55). But, if Plaintiffs received the injunction they ask for, the Ballot Board would likely be barred from dividing a petition at all, including after it received the required number of signatures. Defendants argue that issuing a TRO would cause harm to the State. Specifically, it would impede the State's interests in avoiding voter confusion, promoting informed decision-making, and preventing logrolling. While issuing an injunction could cause the harms the separate-petitions rule was designed to avoid, this factor does not tip the analysis either way.

**D) Public interest**

"[I]n First Amendment cases, 'the determination of where public interest lies ... is dependent on a determination of the likelihood of success on the merits of the First Amendment challenge,' because if the regulation in question is likely to be deemed constitutional, the public interest will not be harmed by its enforcement." *Jones v. Caruso*, 569 F.3d 258, 278 (6th Cir. 2009) (internal quotation omitted) (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)).  In light of the Court's finding that Plaintiffs are unlikely to prevail on their First Amendment challenge, the Court further finds that the public interest would not be advanced by issuing an injunction.


**IV) Conclusion**

The Court finds that Plaintiffs are unlikely to succeed on the merits of their claim and that none of the other factors favors issuing injunctive relief.  Thus, Plaintiffs' motion for a temporary restraining order and preliminary injunction (doc. 2) is DENIED.

IT IS SO ORDERED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: November 3, 2016