IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **COMMITTEE TO IMPOSE TERM LIMITS ON THE OHIO SUPREME COURT AND TO PRECLUDE SPECIAL LEGAL STATUS FOR MEMBERS AND EMPLOYEES OF THE OHIO GENERAL ASSEMBLY, et al.,** | Case No. 2:16-cv-1030 |
| Plaintiffs, | Judge Graham |
| v. | Magistrate Judge Kemp |
| **OHIO BALLOT BOARD, et al.,** | |
| Defendants. | |

## OPINION & ORDER

Ohio permits its citizens to amend the state constitution by proposing an amendment to electors through a petition, garnering sufficient signatures, placing the proposed amendment on the ballot, and having the proposed amendment approved by a majority of the electors that voted on the proposal. This is called the initiative process. Ohio law requires anyone who wants to amend Ohio's Constitution through the initiative process to comply with a variety of rules. One of those rules is the single-subject or separate-petitions rule: each petition must contain only one proposed constitutional amendment. If a petition contains more than one amendment, the Ohio Ballot Board will split the petition into two or more petitions—as many as there are separate issues. Plaintiffs challenged that rule, alleging that the rule and the process Ohio uses to enforce it violate their rights to free speech and due process as well as the doctrine of separation of powers. But because the separate-petitions rule is constitutional, and Plaintiffs otherwise fail to state a claim over which this Court has jurisdiction, Defendants' Motion to Dismiss is **GRANTED**. (Doc. 16).

1

**I. Factual Allegations**

First the Court will discuss the parties; second, the challenged statutes; third, plaintiffs' initiative petition and its progress.

There are five Plaintiffs. The first is an unincorporated committee called the "Committee to Impose Term Limits on the Ohio Supreme Court and to Preclude Special Legal Status for Members and Employees of the Ohio General Assembly," (the "Committee"). (Am. Compl. at ¶ 8, Doc. 14). The Committee has three members, all of whom are plaintiffs too. (*Id.* at ¶¶ 10–13). Sandra Wallace, a signatory to the preliminary initiative petition sponsored by the Committee, is the fifth plaintiff. (*Id.* at ¶¶ 15–16).

Plaintiffs sued seven Defendants: the Ohio Ballot Board; its five members, some of whom are members of the Ohio General Assembly; and the Ohio Attorney General, Mike DeWine. (*Id.* at ¶¶ 17–23).

Now for some background on the Ohio law challenged by Plaintiffs: the separate-petitions rule.

The Ohio Constitution vests the legislative power of the state in a "General Assembly consisting of a senate and house of representatives." Ohio Const. art. II, § 1. But Ohio's citizens "reserve the power . . . independent of the General Assembly to propose amendments to the constitution and to adopt or reject the same at the polls." Ohio Const. art. II, § 1. Ohio regulates the initiative process provided by its constitution.

> The person who wants an initiative on the ballot must first file a preliminary petition with the Ohio Attorney General. Ohio Rev. Code § 3519.01(A). That petition must be signed by 1,000 qualified Ohio electors, include the full text of the proposed law or constitutional amendment, and include a summary of the proposed law or amendment. *Id.* Next, the Attorney General has 10 days to certify whether the summary of the proposed law or amendment is a fair and truthful statement. *Id.* If the Attorney General certifies the law, he must then send it to the Ohio Ballot Board. *Id.* Within 10 days after receiving the certified petition from the attorney general, the Ballot Board must determine whether the initiative petition "contains only one proposed law or constitutional amendment." Ohio Rev. Code § 3505.062(A). If the Ballot Board concludes that the petition contains only one proposed law or amendment, it must certify its approval to the Attorney General, who then must file a verified copy of the proposed law or amendment with the Secretary of State. *Id.* However, if the Ballot Board concludes that the petition contains more than one proposed law or amendment, the Board "shall divide the initiative petition into individual petitions containing only one proposed law or constitutional amendment so as to enable voters to vote on each proposal separately and certify its approval to the attorney general." *Id.*

2

(Op. & Order Den. Mot. TRO at 2–3, Doc. 11).

Plaintiffs propose the following constitutional amendment:

**Article IV, Section 6.**
(D) No person shall be elected or appointed as a judge of the Supreme Court if said person, at the time of said election or appointment, has served nine or more consecutive years as a judge of the Supreme Court regardless of whether as chief justice, a justice, or a combination of the two.

**Article II, Section 43.**
All laws that apply to the people of the State of Ohio and its political subdivisions shall apply equally to the members and employees of the General Assembly.

(Am. Compl. at ¶ 64).

On October 26, 2016, the Committee submitted its initiative petition to the Office of the Ohio Attorney General. (*Id.* at ¶ 66). The petition contained the full text of the proposed constitutional amendment, a summary of the proposed constitutional amendment, and the preliminary initiative petition purporting to contain 1,573 signatures in support of the proposed amendment. (*Id.*). The same day the Committee submitted its petition, Plaintiffs filed this lawsuit and moved for a Temporary Restraining Order asking the Court to enjoin the Ohio Ballot Board from enforcing the separate-petitions rule. (Mot. TRO, Doc. 2). The Court denied Plaintiffs' Motion. (Op. & Order Den. Mot. TRO).

On November 7, 2016, the Ohio Attorney General approved Plaintiffs' submitted summary of the proposed constitutional amendment as "a fair and truthful statement of the proposed . . . constitutional amendment," Ohio Rev. Code § 3519.01(A), and certified that it contained sufficient signatures of registered electors, (Am. Compl. at ¶¶ 67, 69). The Ohio Attorney General then submitted the proposed constitutional amendment to the Ohio Ballot Board for its review process. (Am. Compl. at ¶ 69).

The Ohio Ballot Board announced on November 10, 2016 that it would meet to discuss Plaintiffs' petition on November 14, 2016. (*Id.* at ¶ 71). The Ohio Ballot Board met on November 14 to review and assess the content of the proposed constitutional amendment and "determined that the proposed initiative petition contains more than one proposed constitutional amendment and…[, therefore,] divided the initiative petition into two individual petitions, each containing only one proposed constitutional amendment." (Am. Compl. at ¶ 74 (quoting Ex. G, Doc. 14-7) (alterations in Am. Compl.).

That's what Plaintiffs alleged happened; here's how they claim Defendants violated the law.

Plaintiffs' first claim is that the Ohio Ballot Board's review and division of Plaintiffs' proposed constitutional amendment is a content-based regulation of their core political speech, which cannot pass strict scrutiny. By dividing Plaintiffs' petition in two, the Ohio Ballot Board's action impairs Plaintiffs' speech, they allege, by requiring Plaintiffs to garner twice the number of signatures for their now-separate initiative petitions. This, Plaintiffs assert, imposes an undue burden on the exercise of their First Amendment rights. Specifically, it will cost Plaintiffs more money to gather enough signatures for two initiative petitions than it would for one petition. (Am. Compl. at ¶¶ 86–87).

Plaintiffs' second claim is that the Ohio Ballot Board didn't provide adequate advance notice of its November 14, 2016 meeting at which it made the decision to split the proposed constitutional amendment into two. (Am. Compl. at ¶¶ 119–23). Plaintiffs ask for a declaratory judgment that the actions of the Ohio Ballot Board in its November 14, 2016 meeting violated the Due Process Clause "and, accordingly, [are] null and void." (*Id.* at ¶ 122). Plaintiffs also request "appropriate injunctive relief to remedy the foregoing violation of the Due Process Clause." (*Id.* at ¶ 123).

Plaintiffs' third and final claim is that "the Ohio Ballot Board and its individual members engage[d] in an executive or administrative function" by enforcing the separate-petitions requirement, and since three members of the Ohio Ballot Board are also members of the Ohio legislature, those members "have violated the constitutional doctrine of separation of powers." (*Id.* at ¶¶ 125, 130). Plaintiffs seek a declaratory judgment concerning the constitutionality of members of the Ohio legislature simultaneously serving on the Ohio Ballot Board. (*Id.* at ¶ 137). Since this is unconstitutional, Plaintiffs assert, they are entitled to a declaratory judgment that the action of the Ohio Ballot Board was "taken in violation of the constitutional doctrine of separation of powers and, thus, [is] null and void." (*Id.* at ¶ 138).

## II. Legal Standards

Defendants argue that some of Plaintiffs claims fail because the Court lacks subject-matter jurisdiction over them; Defendants argue others fail because Plaintiffs fail to state a claim.

If the Court lacks subject-matter jurisdiction, the Court can dismiss Plaintiffs' claims. Federal Rule of Civil Procedure 12(b)(1) permits a party to move for such a dismissal. Challenges to the Court's subject-matter jurisdiction "'come in two varieties: a facial attack or a factual attack.'" *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)). A facial attack—like the one Defendants appear to make here—"questions merely the sufficiency of the pleading." *Id.* (quoting *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). And just like with a 12(b)(6) motion that assesses the sufficiency of the pleadings, a facial attack on the Court's subject-matter jurisdiction requires the Court to accept the allegations in the complaint as true. *Id.* (citing *Gentek*, 491 F.3d at 330).

If a plaintiff has laid out his claims in the pleadings, and those claims fail as a matter of law, Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss those claims. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009). Plaintiffs don't need to prove their case at the pleadings stage; they need only provide a complaint that "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When determining whether a plausible claim exists, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

**III. Discussion**

Plaintiffs identify three federal constitutional bases for their claims.

### A. First Amendment

Two concerns face off in this case: freedom of speech and the Ohio's need to regulate its elections.

The First Amendment guarantees, among other things, the right to freedom of speech. U.S. Const. amend. I. But not all speech is the same; political speech "occupies the core of the protection afforded by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995). First Amendment protections are at their zenith when a law "restricts access to the most effective, fundamental, and perhaps economical avenue of political discourse, direct one-on-one communication." *Meyer v. Grant*, 486 U.S. 414, 424 (1988). The courts call this

5

"core political speech." *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 186 (1999) ("Petition circulation, we held [in *Meyer*], is 'core political speech' . . . ."); *but see id.* at 207–08 (Thomas, J., concurring in the judgment) (distinguishing the direct regulation of core political speech from the regulation in *Meyer*). And if a law "trenches upon an area in which the importance of First Amendment protections is 'at its zenith[,]'" a state must overcome the "well-nigh insurmountable" barrier of "exacting scrutiny" in order to justify its regulation. *Meyer*, 486 U.S. at 425.

On the other hand, States have "considerable leeway to protect the integrity and reliability of the initiative process as they have with respect to election processes generally." *Buckley*, 525 U.S. at 191. For example, states may impose rules for obtaining ballot access, like "the number of signatures required, the time for submission, and the method of verification." *John Doe No. 1 v. Reed*, 561 U.S. 186, 212 (2010) (Sotomayor, J., concurring). But even these "structural decisions 'inevitably affect[]—at least to some degree—the individual's right' to speak about political issues and 'to associate with others for political ends.'" *Id.* (Sotomayor, J., concurring) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)). The distinction between core political speech and the mechanics of the election process is often fleeting because even election-mechanics "regulations often will directly restrict or otherwise burden core political speech and associational rights." *Buckley*, 525 U.S. at 206 (Thomas, J., concurring in the judgment). But that doesn't relieve the Court from making these "hard judgments," even without the benefit of a "litmus-paper test" to separate "valid ballot-access provisions from invalid interactive speech restrictions." *Buckley*, 525 U.S. at 192 (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)).

Sometimes, courts find it clear that a law "is a regulation of pure speech." *McIntyre*, 514 U.S. at 345. But sometimes it's not that clear, and in that case, the Court can look to the burden imposed on a plaintiff's free speech rights to assess a law's constitutionality. The Supreme Court has established a framework for assessing the constitutionality, under the First and Fourteenth Amendments, of state election laws: "[w]hen a State's rule imposes severe burdens on speech or association, it must be narrowly tailored to serve a compelling interest; lesser burdens trigger less exacting review, and a State's important regulatory interests are typically enough to justify reasonable restrictions." *Buckley*, 525 U.S. at 206 (1999) (Thomas, J., concurring in the judgment) (citing *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358–59 (1997); *Burdick v. Taku-*

*shi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 788–90 (1983)). So, if "a ballot-access provision chills First Amendment speech, the level of scrutiny to be applied depends on the severity of the burden." *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 414 (6th Cir. 2014); *see also Ohio Democratic Party v. Husted*, 834 F.3d 620, 627 (6th Cir. 2016) (recognizing the "flexible balancing approach"). Courts refer to this as the *Anderson-Burdick* framework. *Ohio Democratic Party*, 834 F.3d at 626.

So then, how much of a burden is Ohio's separate-petitions rule?

The Supreme Court appears to take the position that single-subject rules for voter initiatives—like the rule at issue here—are part of regulating the electoral process and do not impose a severe burden on free speech rights. *See Buckley*, 525 U.S. at 191–92. While *Buckley* did not involve a single-subject rule, in *Buckley* the Supreme Court cited, with apparent approval, its own denial of a petition for certiorari in another case, *Biddulph v. Mortham*, 89 F.3d 1491, 1501 (11th Cir. 1996). *Buckley* 525 U.S. at 191–92.

In *Biddulph*, the Eleventh Circuit held that while "there are some scenarios in which a First Amendment challenge seeking strict scrutiny of a state's initiative process would survive a motion to dismiss, Biddulph has failed to make out such a viable claim." 89 F.3d at 1501 (affirming district court's grant of motion to dismiss for failure to state a claim). The Plaintiff-Appellants in *Biddulph* alleged that Florida's initiative process violated their First Amendment rights; specifically, Florida law required amendment proposed by initiative to address a single subject. *Id.* at 1493. The *Biddulph* court rejected this argument, holding that "strict scrutiny" did not apply to the single-subject rule because the rule was not "content-based," it had no "disparate impact on certain political viewpoints," it was not applied by Florida "in a discriminatory manner," and it did not "impermissibly burden the free exchange of ideas about the objective of an initiative proposal." *Id.* at 1500. Biddulph filed a petition for certiorari, which the Supreme Court denied. *Biddulph v. Mortham*, 519 U.S. 1151 (1997).

Now, back to *Buckley*: when the Supreme Court cited its own denial of certiorari in *Biddulph*, it all but approved *Biddulph*'s holding that Florida's single-subject rule passed lesser scrutiny. *See Buckley*, 525 U.S. at 191–92. Specifically, the *Buckley* court cited *Biddulph* for support for the proposition that "States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally." *Buckley*, 525 U.S. at 191. And the *Buckley* court noted that the *Biddulph* court

7

"uph[eld] single subject and unambiguous title requirements for initiative proposals to amend Florida's constitution." *Buckley*, 525 U.S. at 192 (explanatory parenthetical in citation to *Biddulph*). *Biddulph* contains the closest analog to the challenge raised here, and it held that single-subject rules are not subject to strict scrutiny, a holding the Supreme Court appears to have cited with approval.

It's possible that initiative-petition regulations, like single-subject rules, could be subject to strict scrutiny; but only in narrow circumstances. *Biddulph*, 89 F.3d at 1500. For example, regulations that "significantly inhibit communication with voters about proposed political change [that] are not warranted by the state interests." *Buckley*, 525 U.S. at 192. A state cannot apply a facially neutral law in a discriminatory manner. *Biddulph*, 89 F.3d at 1500. Nor may a state's voter-initiative regulations "disparately impact a particular viewpoint or [be] content-based." *Id.* These are examples of situations that would constitute a severe burden on First Amendment rights.

But Courts that analyze separate-petition or single-subject rules hold that such rules do not constitute a severe burden on First Amendment rights; therefore, they are not subject to strict (or exacting) scrutiny. *See Biddulph*, 89 F.3d at 1501; *Pest Comm. v. Miller*, 626 F.3d 1097, 1107 (9th Cir. 2010) (holding that single-subject requirement for initiative petition was not a direct regulation of core political speech nor did it impose a severe burden on the plaintiff's First Amendment rights); *see also Campbell v. Buckley*, 203 F.3d 738, 745 (10th Cir. 2000).[1]

Plaintiffs make no meaningful distinction between the challenge they bring and the challenges brought to the single-subject rules in *Biddulph* and *Pest Committee*. Here, the separate-petitions rule is not a direct regulation of core political speech, it does not significantly inhibit communication with voters, it does not disparately impact any particular viewpoint, and it is content-neutral.

The separate petitions rule is a "*prerequisite*[] to the circulation of initiative and referendum petitions. [It does] not implicate protections for core political speech because [it does] not directly affect or even involve one-on-one communications with voters." *Pest Committee*, 626

---

[1] *Biddulph* and *Pest Committee* refer to the level of scrutiny as "strict scrutiny." *Biddulph*, 89 F.3d at 1493; *Pest Comm.*, 626 F.3d at 1107. The Sixth Circuit calls it "exacting scrutiny," *Libertarian Party of Ohio*, 751 F.3d at 414 (6th Cir. 2014), which is what the Supreme Court calls it, *see, e.g.*, *Buckley*, 525 U.S. at 199, 204; *but see id.* at 206 (Thomas, J., concurring in the judgment) (referring to standard as "strict scrutiny," but referring to it as an "exacting standard.").

8

F.3d at 1107. Ohio's rule does not burden the interchange of ideas; indeed, nothing prevents petition circulators from proposing both amendments to would-be signatories in the same encounter—the would-be signatory will now be presented with separate proposed constitutional amendments and can sign a petition for neither, one, or both. Just like the rules in *Pest Committee*, Ohio's separate-petitions rule doesn't constitute a direct regulation of core political speech. In fact, "[i]f anything, requiring proponents to pursue separate initiatives on separate subjects might encourage more speech on each such subject." *Campbell*, 203 F.3d at 745. And in this way, the separate-petitions rule does not limit the "quantity of speech available" to Plaintiffs. *Id.*

Plaintiffs make no assertion that Ohio has applied the separate-petitions rule against them in a discriminatory manner. Neither have Plaintiffs asserted that the rule disparately impacts a particular viewpoint. Plaintiffs' remaining argument is that the rule is not content neutral.

But Ohio's separate-petitions rule is content neutral. Plaintiffs argue that the Ohio Ballot Board reads the petition and examines its "content" to determine whether it should divide the petition or not. True—the Ohio Ballot Board must read the text of the proposed constitutional amendment. But "content" has a particular meaning in the First Amendment context, and an analysis of "content-based" laws shows why Plaintiffs' argument on this point fails.

"Government regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015). This may include obvious distinctions, like defining regulated speech by a particular subject matter, say football or airplanes. *Id.* Other distinctions "are more subtle, [like] defining regulated speech by its function or purpose." *Id.* But the Ohio rules make neither obvious nor subtle distinctions based on content. The separate-petitions rule doesn't require the examination of the function, purpose, or subject-matter of a proposed constitutional amendment. The rule doesn't exclude any particular topic from the initiative process nor does it discriminate between viewpoints that might be espoused on an issue. *See id.* at 2230 ("'[T]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic.'") (citing *Consol. Edison Co. of N.Y. v. Public Serv. Comm'n of N. Y.*, 447 U.S. 530, 537 (1980)). Ohio's rule is facially content neutral.

But *Reed* recognizes "a separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be ' "justi-

fied without reference to the content of the regulated speech," ' or that were adopted by the government 'because of disagreement with the message [the speech] conveys[.]'" *Id.* at 2227 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Plaintiffs don't allege that Ohio adopted the separate-petitions rules because it disagreed with Plaintiffs' message. And Ohio's own justification for the rule—to "enable the voters to vote on that proposal separately," Ohio Rev. Code § 3519.01(A)—makes no reference to the content of the regulated speech at all. Therefore, the separate-petitions rule doesn't fall into *Reed*'s second category of laws. In short, the separate-petitions rule is content neutral.

Because Ohio's rules don't implicate any of the concerns that might trigger exacting scrutiny, a more relaxed standard applies under the *Anderson-Burdick* framework: whether a State's important regulatory interest is enough to justify reasonable restrictions. *Buckley*, 525 U.S. at 206 (Thomas, J., concurring in the judgment) (citing *Burdick*, *Timmons*, and *Anderson*). Under this more relaxed standard, "'minimally burdensome and nondiscriminatory' regulations are subject to" an inquiry more akin to rational basis. *Ohio Democratic Party*, 834 F.3d at 627 (quoting *Ohio Council 8 Am. Fed'n of State v. Husted*, 814 F.3d 329, 335 (6th Cir. 2016)).

Here, Ohio justifies the separate-petitions rule in its own statute by asserting that it "enable[s] the voters to vote on that proposal separately." Ohio Rev. Code § 3519.01(A). And in the context of state regulation of the initiative process, "a state has a strong interest in ensuring that its elections are run fairly and honestly," and the state has a strong interest in ensuring that proposed amendments aren't submitted to voters unless each has sufficient support. *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir. 1993). Voting on each proposal separately avoids confusion, promotes informed decision-making, and prevents logrolling[2], all of which are important government interests recognized by other courts. *See Pest Comm.*, 626 F.3d at 1107. Ohio's separate-petitions rule serves important state interests without impermissibly burdening free speech. Therefore, under less exacting scrutiny, the rule is constitutional.

Plaintiffs present a variety of other arguments in favor of denying Defendants' Motion to Dismiss. All of Plaintiffs' arguments fail.

---

[2] Logrolling in legislation is "'the practice of several minorities combining their several proposals as different provisions of a single bill and thus consolidating their votes so that a majority is obtained for the omnibus bill where perhaps no single proposal of each minority could have obtained majority approval separately.'" *84 Video/Newsstand, Inc. v. Sartini*, No. 1:07-CV-3190, 2009 WL 10656012, at *8 (N.D. Ohio Jan. 5, 2009) (quoting *State ex rel. Dix v. Celeste*, 11 Ohio St. 3d 141, 142–43, 464 N.E. 2d 153, 155 (1984)).

10

First, Plaintiffs argue that the Court shouldn't test the "merits" of a claim when considering a Rule 12(b)(6) motion. Plaintiffs suggest that much of Defendants' legal analysis of their First Amendment claim is not appropriate for a motion to dismiss. Plaintiffs are wrong. Federal courts often consider the legal merits of a case on a motion to dismiss; in fact, federal courts have considered issues just like those presented here when ruling on a motion to dismiss. *See, e.g.*, *Biddulph*, 89 F.3d at 1501 (affirming district court's grant of a motion to dismiss First Amendment challenge to Florida's voter-initiative regulations). And here, even taking Plaintiffs' pleaded facts as true, their First Amendment claim fails as a matter of law; therefore, the Court can dismiss it under Rule 12(b)(6).

Second, Plaintiffs argue that the Court should not dismiss Plaintiffs' as-applied challenge to the separate-petitions rule since Defendants "ignored" Plaintiffs' as-applied claim in the Motion to Dismiss and only addressed Plaintiffs' facial challenge. The Court can hardly fault Defendants for ignoring an as-applied challenge; Plaintiffs fail to meaningfully distinguish an as-applied challenge from a facial challenge in their Amended Complaint, and the gist of Plaintiffs' request for relief is for the Court to declare the separate-petitions rule unconstitutional. (*See* Am. Compl. at ¶ 5). The section of the Amended Complaint to which Plaintiffs point the Court is paragraph five, which requests a general legal declaration that the relevant Ohio statutes violate the First Amendment and requests injunctive relief specific to Plaintiffs. (*See* Am. Compl. at ¶ 5(i–v)).

The demarcation line between an as-applied and facial challenge isn't so well marked "that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). The distinction "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Id.*

Here, Plaintiffs ask the Court to declare the Ohio statutes unconstitutional. And they do so based on their own set of facts. But importantly, Plaintiffs don't distinguish any part of their claim that should survive as an as-applied challenge, and the Court won't do so. Also, Defendants do address the Ohio statutes as the statutes apply to Plaintiffs and their petition, so to the extent Plaintiffs raise an as-applied challenge, the Court finds it is adequately addressed by the moving papers and this order.

11

Third, Plaintiffs argue that Defendants' Motion should be denied because Plaintiffs raise three "separate and independent bases" for their First Amendment claim, but Defendants only address one. Specifically, Plaintiffs argue that their

> First Amendment claim is posited upon three separate and independent bases, *viz.*, the challenged statutes: (i) do not satisfy the appropriate constitutional scrutiny regardless of whether they are content-based or content-neutral regulation[s] of core political speech; (ii) constitute a prior restraint upon the exercise of core political speech; and (iii) significantly burden the core political speech of those proposing a constitutional amendment (or law) by initiative petition.

(Pls.' Resp. at 8, Doc. 17). Plaintiffs argue that Defendants only address the first basis, ignoring the second and third. Defendants retort that all three bases fail for the same reasons. Plaintiffs argue that the second and third bases for their First Amendment claim "are clearly premised upon free speech rights, not the right to vote (which would potentially implicate *Anderson-Burdick*)." (*Id.* at 8). According to Plaintiffs, even if the first basis for their First Amendment claim fails, the second and third bases require a completely separate analysis. In Plaintiffs' view, Defendants don't provide an analysis for either of these bases, and since Defendants bear the burden on a motion to dismiss, Defendants have failed, and the motion should be denied.

Again, Plaintiffs' argument fails. Regardless of how Plaintiffs couch their claim, the Court's analysis covers Plaintiffs' First Amendment challenge. The Court analyzed whether Plaintiffs' speech was "core political speech," and found that it wasn't in the class of speech that receives heightened First Amendment protection. Plaintiffs' attempt to bring their claim under the prior-restraint doctrine fails, and Plaintiffs' allegations in the Amended Complaint asserting as much are mere legal conclusions, which the Court is not bound to accept. *Iqbal*, 556 U.S. at 678. "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations." *Id.* at 679.

"The term prior restraint is used 'to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.'" *Alexander v. United States*, 509 U.S. 544, 550 (1993) (quoting M. Nimmer, *Nimmer on Freedom of Speech* § 4.03 (1984) (emphasis added)). The action of the Ohio Ballot Board is not a prior restraint because it didn't forbid any communication; it only required Plaintiffs to present two separate petitions. And when Plaintiffs present those two separate petitions to potential signatories, nothing the Ohio Ballot Board did restrains the topics they may discuss. In short, the

administrative order of the Ohio Ballot Board dividing Plaintiffs' petition in two does not forbid any communication; therefore, it is not a prior restraint on speech.

Plaintiffs' First Amendment claim is dismissed.

### B. Due Process

In Plaintiffs' second cause of action, they allege that the Ohio Ballot Board and its members violated Plaintiffs' due-process rights by conducting a meeting on November 14, 2016 without providing Plaintiffs adequate advance notice. (Am. Compl. at ¶ 121). Plaintiffs ask the Court to declare that the action taken by the Ohio Ballot Board at the meeting—separating Plaintiffs' proposal into separate initiative petitions—violated the Due Process Clause and is therefore null and void. (Am. Compl. at ¶ 122). Specifically, Plaintiffs allege that the Ohio Ballot Board and its members violated the Due Process Clause by (1) holding and conducting the meeting; (2) reviewing and assessing the content of the proposed constitutional amendment; and (3) separating the proposal into two separate petitions. (*Id.*). Plaintiffs do not allege that Defendants violated any Ohio statute when they held the meeting and divided the petition, only that the lack of individualized notice of the November 14, 2016 Ohio Ballot Board meeting violated Plaintiffs' due-process rights.

Defendants argue that the Eleventh Amendment bars any retrospective relief Plaintiffs may seek in their due-process claim, and even if the Amended Complaint could be construed to assert a claim for prospective injunctive relief, such a claim fails because it fails to identify a protected liberty interest and fails to identify a violation of procedural due process.

Plaintiffs concede that, to the extent their due-process claim could be construed as seeking retrospective relief, the Eleventh Amendment precludes this claim. But, they argue, the same "process and procedure by which the Ohio Ballot Board acted against the First Amendment interest of Plaintiffs will continue in the future." (Pls.' Resp. at 24). Since this allegedly unconstitutional process will take place again, "appropriate prospective relief is in order to ensure the Ohio Ballot Board complies in the future with its constitutional duty to provide adequate advance notice before meeting." (*Id.* at 26).

Whether the Eleventh Amendment precludes Plaintiffs' claim depends on the remedy they seek. *See Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013) (claims for prospective relief to end a continuing violation of federal law are permitted whereas retroactive relief is barred). For the alleged violation of the Due Process Clause, Plaintiffs' Amended Com-

plaint seeks two types of remedies: one specific, the other general. The specific remedy: Plaintiffs ask the Court to declare that the Ohio Ballot Board's November 14, 2016 meeting, review, and decision to split Plaintiffs' petition in two violated the Due Process Clause and is therefore "null and void." (Am. Compl. at ¶ 122). The general remedy: Plaintiffs state they are "further entitled to appropriate injunctive relief to remedy the foregoing violation of the Due Process Clause." (*Id.* at ¶ 123).

The Eleventh Amendment grants sovereign immunity to States except when the State consents to be sued, when Congress abrogates a State's immunity, or when the *Ex Parte Young* exception applies. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citing *Ex parte Young*, 209 U.S. 123 (1908)). The *Ex Parte Young* exception permits a federal court to "issue prospective injunctive and declaratory relief compelling a state official to comply with federal law . . . . [but] the *Ex Part Young* exception does not . . . extend to any retroactive relief." *S & M Brands*, 527 F.3d at 507–08.

Here, Plaintiffs ask the Court to declare as null and void a prior action by the Ohio Ballot Board, which is retroactive relief. (*See* Am. Compl. at ¶¶ 5(vii), ¶ 122). The Court can't declare as null and void the decision of the Ohio Ballot Board because this constitutes a claim against the State seeking retroactive relief for an allegedly constitutionally infirm meeting that took place on November 14, 2016. Therefore, Defendants are immune from this claim.

Plaintiffs also seek a more general remedy: "appropriate injunctive relief to remedy the foregoing violation of the Due Process Clause." (*Id.* at ¶ 123). The "foregoing violation of the Due Process Clause," to which Plaintiffs refer is one that already occurred—the Ohio Ballot Board held its meeting to discuss Plaintiffs' petition without giving Plaintiffs special notice of the meeting. While Plaintiffs argue that they need prospective relief to ensure that the Ohio Ballot Board complies with the Due Process Clause "in the future," references to ongoing violations of the Due Process Clause aren't in the Amended Complaint, they're only in Plaintiffs' Response memorandum. (Pls.' Resp. at 26). Even generously construing Plaintiffs' claims, their due-process claim states no claim for prospective injunctive relief. Therefore, Plaintiffs' claim under the Due Process Clause will be dismissed because it's precluded by the Eleventh Amendment.

But even if there was a narrow slice of Plaintiffs' due-process claim that could sneak by the Eleventh Amendment, it would still fail.

Plaintiffs' claim fails because they don't allege facts showing they are entitled to relief. Plaintiffs' argument, at its most basic, is that Defendants have a constitutional duty to notify them individually when their petition is to be reviewed by the Ohio Ballot Board. Here, there's no statute that requires the Ohio Ballot Board to notify Plaintiffs in particular, only the requirement that public bodies establish a "reasonable method whereby any person may determine . . . the time, place, and purpose of all special meetings." Ohio Rev. Code § 121.22(F). In addition to this general notice-posting requirement, public bodies must also provide individualized advance notice if an individual requests it and pays a "reasonable fee." § 121.22(F).

The Ohio Ballot Board convened within ten days following its receipt of Plaintiffs' initiative petition as required by the Ohio Revised Code section 3505.062(A), and the Ohio Ballot Board notified the public—through a press release on November 10, 2016—that it was holding the meeting on November 14, 2016. (Am. Compl. at ¶ 71). The Ohio Ballot Board complied with the requirement that it provide public notice through a reasonable method by issuing a press release regarding the meeting.

Plaintiffs appear to argue that they have a constitutional right to individualized notice of the meeting. And Ohio law provides for this. *See* Ohio Rev. Code § 121.22(F). All Plaintiffs had to do was request advance notice and pay a reasonable fee. Plaintiffs don't allege that they did so, which means they didn't take advantage of all of the process available to them. This being the case, Plaintiffs have failed to state a due-process claim.

### C. Separation of Powers

Plaintiffs assert their separation-of-powers claim as a violation of the Ohio Constitution. (*See* Am. Compl. at ¶¶ 131–33). They concede that the Eleventh Amendment precludes a federal court from exercising jurisdiction over such a claim. That's true. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Ohio has not waived its sovereign immunity here. Therefore, the Court lacks jurisdiction over this claim.

Plaintiffs concede the Eleventh Amendment applies to this claim, but Plaintiffs narrow their concession, arguing that only "dismissal *without* prejudice is warranted." (Pls.' Resp. at 26) (emphasis added). While dismissals of claims barred by the Eleventh Amendment are sometimes made with prejudice, *see, e.g.*, *Latham v. Com. of Ky. Corr. Cabinet*, 900 F.2d 260 (6th Cir.

1990) (table decision) (affirming district court's dismissal of complaint with prejudice on the basis of Eleventh Amendment immunity); *Dyer v. Radcliffe*, 169 F. Supp. 2d 770, 777 (S.D. Ohio 2001), these types of dismissals "should generally be made without prejudice," *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005); *see also Fiore v. Smith*, No. 3:09-CV-359, 2010 WL 2507050, at *4 n.4 (E.D. Tenn. June 17, 2010) (explaining dismissal without prejudice is appropriate because the Court lacks subject-matter jurisdiction over the claims). Therefore, Plaintiffs' separation-of-powers claim is dismissed without prejudice.

### IV. Conclusion

Defendants' Motion to Dismiss is **GRANTED**. (Doc. 16). Plaintiffs' First Amendment and Due Process Clause claims are dismissed **WITH PREJUDICE**. Plaintiffs' separation-of-powers claim is dismissed **WITHOUT PREJUDICE**.

The clerk is directed to enter judgment for Defendants and terminate the remaining pending motion, Defendants' Motion to Dismiss, (Doc. 13), filed before Plaintiffs' filed their Amended Complaint.

IT IS SO ORDERED.

    s/ James L. Graham
    JAMES L. GRAHAM
    United States District Judge

DATE: July 28, 2017